UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: TRIBUNE COMPANY FRAUDULENT CONVEYANCE LITIGATION | Consolidated Multidistrict Action No. 11-MD-2296 (RJS) No. 12-MC-2296 (RJS) |
| MARC S. KIRSCHNER, as Litigation Trustee for the TRIBUNE LITIGATION TRUST, <br><br> Plaintiff, <br><br> -against- <br><br> CITIGROUP GLOBAL MARKETS INC. and MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, <br><br> Defendants. | Individual Action No. 12-CV-6055 (RJS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITIGROUP GLOBAL MARKETS INC. AND MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED'S PHASE TWO MOTION TO DISMISS THE *CITIGROUP* ACTION (PHASE TWO MOTION NO. 10)**

O'MELVENY & MYERS LLP

Daniel L. Cantor (dcantor@omm.com)
Evan M. Jones (ejones@omm.com)
Daniel S. Shamah (dshamah@omm.com)

7 Times Square
New York, New York 10036
Tel. (212) 326-2000
Fax (212) 326-2061

*Attorneys for Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated*

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

Andrew G. Gordon (agordon@paulweiss.com)
Kira A. Davis (kdavis@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
Tel.  (212) 373-3000
Fax  (212) 757-3990

*Attorneys for Defendant Citigroup Global Markets Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .............................................................................................. 3

ARGUMENT ................................................................................................... 6

I.    THE TRUSTEE'S CLAIM FOR AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES SHOULD BE DISMISSED. ............... 6

    A.    Delaware Law Applies to the Aiding-and-Abetting Claim. ..................... 6

    B.    The *In Pari Delicto* Doctrine Bars the Trustee's Claim. .......................... 6

    C.    The Adverse Interest Exception Is Inapplicable. ..................................... 8

II.    THE PROFESSIONAL MALPRACTICE CLAIM FAILS AS A MATTER OF LAW. ................................................................................... 10

    A.    New York Law Applies to the Professional Malpractice Claim. ............ 10

    B.    New York Does Not Recognize a Claim for "Professional Malpractice" Against Financial Advisors. ............................................... 11

    C.    The Professional Malpractice Claim Fails Under the *In Pari Delicto* Doctrine and the *Wagoner* Rule. ............................................... 13

III.    THE FRAUDULENT CONVEYANCE CLAIM FAILS AS A MATTER OF LAW. ..................................................................................... 15

    A.    The Court Should Dismiss the Constructive Fraudulent Conveyance Claim Because MLPFS and CGMI Provided Reasonably Equivalent Value. ................................................................ 15

    B.    The Court Should Dismiss the Actual Fraudulent Conveyance Claim. ........................................................................................................ 18

CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abdullahi v. Pfizer, Inc.*,
    562 F.3d 163 (2d Cir. 2009)...........................................................................................6

*In re Actrade Fin. Techs. Ltd.*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005).........................................................................20

*In re Agape World, Inc.*,
    467 B.R. 556 (Bankr. E.D.N.Y. 2012)........................................................................19

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
    842 F. Supp. 2d 1216 (C.D. Cal. 2012) ......................................................................18

*In re Am. Int'l Group, Inc.*,
    965 A.2d 763 (Del. Ch. 2009)......................................................................................11

*In re Am. Int'l Group, Inc. Consol. Derivative Litig.*,
    976 A.2d 872 (Del. Ch. 2009)............................................................................ *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................3, 9, 12, 17

*Atkins Nutritionals, Inc. v. Ernst & Young, LLP*,
    301 A.D.2d 547 (2d Dep't 2003).................................................................................12

*Atlanta Shipping Corp. v. Chem. Bank*,
    818 F.2d 240 (2d Cir. 1987).........................................................................................15

*Bankr. Servs. v. Ernst & Young (In re CBI Holding Co.)*,
    529 F.3d 432 (2d Cir. 2008).........................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................3, 13

*In re Bernard L. Madoff Inv. Secs. LLC*,
    740 F.3d 81 (2d Cir. 2014)...........................................................................................18

*Breeden v. Kirkpatrick & Lockhart, LLP*,
    268 B.R. 704 (S.D.N.Y. 2001).....................................................................................14

*Castle Oil Corp. v. Thompson Pension Employee Plans, Inc.*,
    299 A.D.2d 513 (2d Dep't 2002) .................................................................................12

*Chaikovska v. Ernst & Young, LLP*,
    78 A.D.3d 1661 (4th Dep't 2010) ...............................................................13

*Chase Scientific Research, Inc. v. NIA Group, Inc.*,
    96 N.Y.2d 20 (2001) ...........................................................................12, 13

*In re Complete Mgmt., Inc.*,
    No. 02 CIV. 1736 NRB, 2003 WL 21750178 (S.D.N.Y. July 29, 2003) ...............14

*Concord Cap. Mgmt., LLC v. Bank of Am., N.A.*,
    102 A.D.3d 406 (1st Dep't 2013) .................................................................14

*Corning Inc. v. SRU Biosystems, LLC*,
    292 F. Supp. 2d 583 (D. Del. 2003) ..............................................................11

*Dimsey v. Bank of N.Y.*,
    831 N.Y.S.2d 359 (N.Y. Sup. Ct. 2006) ........................................................12

*In re Enron Corp.*,
    No. 01-16034, 2006 WL 2400369 (Bankr. S.D.N.Y. May 11, 2006) ...................18

*In re First Jersey Secs., Inc.*,
    180 F.3d 504 (3d Cir. 1999)........................................................................16

*In re Geltzer*,
    502 B.R. 760 (Bankr. S.D.N.Y. 2013) ...........................................................15

*Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*,
    491 B.R. 747 (Bankr. W.D. La. 2013) ...........................................................17

*Gray & Assoc., LLC v. Speltz & Weis LLC*,
    880 N.Y.S.2d 223 (N.Y. Sup. Ct. 2009) ........................................................12

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995).......................................................................14

*Holtkamp v. Parklex Assoc.*,
    926 N.Y.S.2d 344, 2011 NY Slip Op 50208(U) (N.Y. Sup. Ct. 2011), *aff'd* 94 A.D.3d
    819 (2d Dep't 2013)..................................................................................13

*Houbigant v. Dev. Specialists, Inc.*,
    229 F. Supp. 2d 208 (S.D.N.Y. 2002).......................................................12, 13

*In re Interco Sys., Inc.*,
    202 B.R. 188 (Bankr. W.D.N.Y. 1996) .........................................................17

*Ironshore Ins. Ltd. v. W. Asset Mgmt. Co.*,
    No. 11 CIV. 05954 LTS, 2012 WL 1981477 (S.D.N.Y. May 30, 2012)................12

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
   742 F.3d 42 (2d Cir. 2014).............................................................................3

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (N.Y. 2010) ......................................................................13, 14

*Liquidation Trust v. Daimler AG (In re Old Carco LLC)*,
   509 F. App'x 77 (2d Cir. 2013) .................................................................18

*In re LTM2 Co-Investment, L.P.*,
   866 A.2d 762 (Del. Ch. 2004).....................................................................7

*In re Madoff Secs.*,
   No. 12-MISC-115 (JSR), 2014 WL 1651952 (S.D.N.Y. Apr. 27, 2014) ...............15

*In re Magnesium Corp. of Am.*,
   399 B.R. 722 (Bankr. S.D.N.Y. 2009) ........................................................12

*In re Marketxt Holdings Corp.*,
   361 B.R. 369 (Bankr. S.D.N.Y. 2007)....................................................18, 20

*Martignago v. Merrill Lynch & Co., Inc.*,
   No. 11 CIV 3923 PGG, 2012 WL 112246 (S.D.N.Y. Jan. 12, 2012)....................4

*Menowitz v. Brown*,
   991 F.2d 36 (2d Cir. 1993).........................................................................6

*Metro. Plaza WP, LLC v. Goetz Fitzpatrick, LLP*,
   No. 11519/2009, 2013 WL 5574533 (N.Y. Sup. Ct. Sept. 30, 2013)...................13

*O'Toole v. Karnani (In re Trinsum Grp., Inc.)*,
   460 B.R. 379 (Bankr. S.D.N.Y. 2011) .........................................................18

*Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*,
   357 B.R. 32 (Bankr. S.D.N.Y. 2006).........................................................16

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit
   Partners L.P. (In re Fedders N. Am., Inc.)*,
   405 B.R. 527 (Bankr. D. Del. 2009) ...........................................................6

*Official Comm. of Unsecured Creditors of Hydrogen LLC v. Blomen*,
   431 B.R. 337 (Bankr. S.D.N.Y. 2010)........................................................18

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*,
   267 F.3d 340 (3d Cir. 2001).......................................................................7

*In re Old CarCo, LLC*,
   454 B.R. 38 (Bankr. S.D.N.Y. 2011) ..........................................................3

*Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.),*
    421 B.R. 626 (Bankr. S.D.N.Y. 2009) ................................................................18, 19

*Perkins v. Haines,*
    661 F.3d 623 (11th Cir. 2011) ........................................................................16

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC),*
    721 F.3d 54 (2d Cir. 2013)................................................................7, 13, 14

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005)..............................................................................19

*Shearson Lehman Hutton, Inc. v. Wagoner,*
    944 F.2d 114 (2d Cir. 1991)............................................................................14

*In re Tanner Family, LLC,*
    556 F.3d 1194 (11th Cir. 2009) ......................................................................17

*Travelers Indem. Co. v. Lake,*
    594 A.2d 38 (Del. 1991) ..................................................................................10

*In re Tribune Co. Fraudulent Conveyance Litig.,*
    499 B.R. 310 (S.D.N.Y. 2013)..........................................................................3

*Zazzali v. Hirschler Fleischer, P.C.,*
    482 B.R. 495 (D. Del. 2012)....................................................................7, 8, 9

## STATUTES AND OTHER AUTHORITIES

11 U.S.C. § 548(a)(1)..................................................................................15, 18, 19

11 U.S.C. § 548(d)(2)(A)..........................................................................................15

28 U.S.C. § 1407.................................................................................................4, 6

N.Y. Debt. & Credit. L. § 276.................................................................................19

Fed. R. Civ. P. 9(b) ..................................................................................................18

Fed. R. Civ. P. 12(b)(1) & (6)....................................................................................1

Defendants Citigroup Global Markets Inc. ("CGMI") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS") (collectively, "Defendants") hereby move, pursuant to the Phase Two Motion Protocol and under Fed. R. Civ. P. 12(b)(1) & (6), to dismiss in its entirety the First Amended Complaint in *Kirschner v. Citigroup Global Markets Inc.*, No. 12-cv-6055 (the "*Citigroup* Action" or "FAC").  (*See* D.I. 230 (12-MC-2296).)

## PRELIMINARY STATEMENT

This case is a misguided attempt to hold two of Tribune's financial advisors, CGMI and MLPFS, responsible for the harm that the Litigation Trustee for the Tribune Litigation Trust (the "Trustee") has already conceded was primarily caused by Tribune's own management.  In the FAC—and in the numerous other claims brought against numerous other defendants—the Trustee accuses Tribune's officers and directors of masterminding "the destruction of Tribune Company by greed, fraud and financial chicanery" (FAC ¶ 1), and then asserts claims against not only those Tribune officers and directors, but nearly every other individual and/or entity that was in any way involved in the 2007 leveraged buyout ("LBO")—no matter how slight the involvement.  As against CGMI and MLPFS, the Trustee asserts three specific counts: (1) aiding and abetting breaches of fiduciary duties by Tribune's management; (2) professional malpractice for somehow failing to prevent the LBO's occurrence; and (3) avoidance and recovery of the advisory fees which Tribune agreed to pay CGMI and MLPFS in 2005 as constructive and/or actual fraudulent transfers.

Even accepting as true the allegations in the FAC, the claims against these Defendants should be dismissed as a matter of law for the following reasons:

*First*, under Delaware law (which, as discussed below, applies to the aiding-and-abetting claim), the Trustee's claim that the Defendants somehow aided and abetted in alleged breaches of fiduciary duty by Tribune's officers and directors is barred by the "venerable in pari delicto

doctrine,"[1] which prevents a party from asserting a claim if the party itself or one standing in that party's shoes is alleged to have participated in the wrongdoing that was a substantial cause of the alleged harm.  That is precisely the case here.  As even a cursory review of the FAC (and the *FitzSimons* complaint filed by the Trustee[2]) reveals, Tribune's officers and directors are alleged to be not just mere participants in the underlying wrongdoing, but, rather, the primary bad actors.  (*See, e.g.*, FAC at p. i-ii ("VIII.  Incentivized To Favor the LBO, the Officers Create Fraudulent, Unrealistic Projections;" "XII. The Company Engages in Intentional Fraud in Order to Close Step One").)  It is well settled that the Trustee stands in Tribune's shoes for purposes of the aiding-and-abetting claim.  (*See infra* at 7.)  Barring narrow exceptions to the *in pari delicto* doctrine not applicable here, the Trustee is precluded from recovering for injuries that, according to the Trustee's own allegations, resulted from the unlawful schemes Tribune engineered, and, thus, the Trustee's claim for aiding and abetting breaches of fiduciary duties must be dismissed.

*Second*, CGMI and MLPFS cannot be held liable for alleged professional malpractice because financial advisors are not among the limited class of "learned professions" subject to malpractice claims under New York law.  And, even if a financial advisor malpractice claim were cognizable here, the Trustee has failed to state such a claim here because the *in pari delicto* doctrine and the related *Wagoner* rule would still operate to bar the Trustee's claim.

*Third,* the Trustee cannot avoid and recover the advisory fees paid to CGMI and MLPFS as constructive or actual fraudulent transfers.  The FAC pleads that Tribune agreed to pay MLPFS and CGMI the advisory fees when it executed engagement letters months before the LBO was presented to the Tribune board, and more than two years before Tribune filed for

---

[1] *In re Am. Int'l Group, Inc. Consol. Derivative Litig.*, 976 A.2d 872, 877 (Del. Ch. 2009).

[2] *Kirschner v. FitzSimons, et al.*, No. 12-CV-2652 (RJS).

bankruptcy.  These allegations doom the constructive fraudulent conveyance claim because (i) payment of the advisory fees plainly satisfied an antecedent obligation Tribune owed to CGMI and MLPFS, and (ii) the FAC confirms that the advisory services CGMI and MLPFS provided to Tribune constituted reasonably equivalent value for the advisory fees.  The Trustee also cannot avoid and recover the advisory fees as an actual fraudulent conveyance because he has not pled with particularity that Tribune paid the advisory fees with an intent to defraud its other creditors.

For these reasons, and as discussed in greater detail below, the FAC should be dismissed in its entirety with prejudice.[3]

## BACKGROUND[4]

The factual background of the Tribune LBO is familiar to the Court, *see, e.g.*, *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310 (S.D.N.Y. 2013), and will not be repeated here.[5]  Rather, set forth below is a brief summary of the FAC allegations relevant to

---

[3] The FAC was not written on a blank slate.  The Trustee had access to millions of pages produced in discovery in the Tribune bankruptcy.  Accordingly, the FAC should be dismissed with prejudice.  *See In re Old CarCo, LLC*, 454 B.R. 38, 60 (Bankr. S.D.N.Y. 2011) (dismissing complaint with prejudice where trustee had full access to discovery "to attempt to present a sustainable complaint.").

[4] While on a motion to dismiss the Court must accept as true all well-pleaded facts in a complaint, the Court must dismiss the complaint if it does not allege facts giving rise to a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Further, the Court need not accept as true conclusory allegations, unreasonable inferences, or legal conclusions set out in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court may also consider the entirety of any document relied on by the FAC, including the Engagement Letters, which were expressly cited and relied upon in the FAC. *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014).  The Engagement Letters are attached as Exhibits A (CGMI) and B (MLPFS) to the Declaration of Andrew G. Gordon ("Gordon Decl.").

[5] This action was originally pled as part of a broader adversary proceeding filed by the Official Committee of Unsecured Creditors of Tribune Co. (the "UCC") and was later re-filed in the District of Delaware as a separate action.  This matter was then transferred to this Court pursuant

CGMI and MLPFS, which Defendants accept, as they must, as true solely for purposes of this motion.

On October 17, 2005, Tribune retained MLPFS to assist in Tribune's "strategic review of the broadcasting and entertainment sector of [its] business" and to "consider[] possible changes to the structure and ownership of its properties." (FAC ¶ 42.)[6] MLPFS agreed to provide "financial advisory and investment banking services" to Tribune, including contacting interested parties and analyzing and negotiating the terms of a proposed "Strategic Transaction." (MLPFS Engagement Letter ¶ 1.) In exchange for these services, Tribune agreed to pay a Success Fee of $12.5 million upon the closing of a Strategic Transaction. (FAC ¶ 44; MLPFS Engagement Letter ¶ 3.) MLPFS's advisory team led was by Michael Costa and Michael O'Grady. (FAC ¶ 85.)[7] Like MLPFS, CGMI was also engaged by Tribune in connection with a potential strategic transaction. (FAC ¶ 43; CGMI Engagement Letter p.1.) The terms of CGMI's engagement were largely identical to the MLPFS engagement, including the services CGMI was to provide and the

---

to 28 U.S.C. § 1407; on January 11, 2013, the Litigation Trustee replaced the UCC as successor plaintiff in this action. (D.I. 15 (12-cv-6055).)

[6] While the FAC alleges that MLPFS "served as one of the lead arrangers for the Senior Credit Facility and the Bridge Facility" (FAC ¶ 26), the documents cited by the FAC demonstrate this is false. MLPFS signed the Engagement Letter (*see* MLPFS Engagement Letter, at 6), and *Merrill Lynch Capital Corporation* ("MLCC") acted as lead arranger for the Senior Credit Facility and the Bridge Facility. (Excerpts of the Senior Credit Facility and the Bridge Facility are attached to the Gordon Decl. as Exhibits C and D, respectively.) And while the FAC also alleges that members of MLPFS's advisory team periodically communicated with MLCC's financing team (FAC ¶ 85), there is no allegation that the two corporate entities were not separate and distinct or that the two shared responsibilities.

[7] Although the FAC is silent on the issue, the Engagement Letter, signed by Mr. Costa, confirms that MLPFS and Mr. Costa were based in New York. (Gordon Decl. Ex. B (MLPFS's address at 4 World Financial Center in New York City).) The Court may also take judicial notice that MLPFS is based in New York. *See Martignago v. Merrill Lynch & Co., Inc.*, No. 11 CIV. 3923 PGG, 2012 WL 112246, at *2 (S.D.N.Y. Jan. 12, 2012) ("Merrill Lynch's corporate headquarters and principal place of business is located in the Southern District of New York").

$12.5 million Success Fee to be paid on closing of a Strategic Transaction.  (FAC ¶ 43; CGMI Engagement Letter p.3.)  The Tribune advisory team at CGMI was headed by Christina Mohr and Rosanne Kurmaniak.  (FAC ¶ 86.)[8]

The FAC alleges that MLPFS and CGMI played a role in steering Tribune into the LBO. (FAC ¶ 92.)  But the FAC confirms that Tribune itself—through its officers and directors—and a host of other players ultimately approved and ensured that the LBO would be consummated. Indeed, over the course of nearly 260 paragraphs of allegations, the Trustee makes it perfectly clear that Tribune is principally to blame for the LBO, alleging that Tribune (through its officers and directors), among other things:

- "committed intentional fraud" in connection with the LBO (*id.* ¶ 82);

- "concealed" projections that were "premised on fraudulent assumptions," (*id.* ¶ 209);

- used these unrealistic financial projections in an effort "to fraudulently bolster [Tribune's] value" (*id.* ¶ 211);

- "decided to mislead [the solvency opinion firm] VRC into believing that Morgan Stanley" had said Tribune would be able to refinance its debt, when no such statement had been made (*id.* ¶¶ 219-20); and

- in "recommending and approving the LBO, breached the fiduciary duties . . . that they owed to [Tribune] and to its creditors"  (*id.* ¶ 115; *see also id.* at ¶ 184).

Notably, this is just a small sampling of the FAC's allegations of wrongdoing by Tribune's officers and directors; the FAC is replete with other examples.

---

[8] Although the FAC is also silent on the location of CGMI, the Engagement Letter, signed by Ms. Mohr, confirms that CGMI and Ms. Mohr were based in New York.  (Gordon Decl. Ex. A (CGMI's address at 388 Greenwich Street in New York City).)  The FAC is also silent as to the location of Ms. Kurmaniak.  Like Ms. Mohr, she was based in New York.  (Gordon Decl. Ex. E.)

## ARGUMENT

I.    **THE TRUSTEE'S CLAIM FOR AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES SHOULD BE DISMISSED.**

    **A.    Delaware Law Applies to the Aiding-and-Abetting Claim.**

Where, as here, an action is transferred pursuant to 28 U.S.C. § 1407, the transferee court applies the substantive state law (including choice-of-law rules) of the jurisdiction in which the action was originally filed, while applying its own interpretations of federal law.[9]  Because this case was initially filed in Delaware, and because the aiding-and-abetting claim is a state-law claim, Delaware choice of law rules apply.[10]  Under Delaware choice of law rules, and in particular, pursuant to the "internal affairs doctrine," Delaware substantive law applies to the claim for aiding and abetting breaches of fiduciary duties, as only a corporation's state of incorporation (here, Delaware) "has the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders."[11]

    **B.    The *In Pari Delicto* Doctrine Bars the Trustee's Claim.**

Under Delaware law, the claim for aiding and abetting breaches of fiduciary duties should be dismissed under the doctrine of *in pari delicto*.  "Delaware, like most American jurisdictions . . ., embraces to some extent the venerable in pari delicto doctrine."[12]  The doctrine "provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for

---

[9]  *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993).

[10]  *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 190 (2d Cir. 2009) (transferee court "was obligated to apply the state law that would have been applicable if the case had not been transferred").

[11]  *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 539, 543 (Bankr. D. Del. 2009).

[12]  *In re Am. Int'l Group, Inc. Consol. Derivative Litig.*, 976 A.2d 872, 882 (Del. Ch. 2009).

the claim."[13]  For purposes of the *in pari delicto* analysis, alleged wrongful conduct by Tribune's directors and officers is imputed to Tribune.[14]  Where, as here, the plaintiff is a bankruptcy trustee "standing in the shoes of [the] debtor," the Trustee is subject to the *in pari delicto* defense to the same extent as the debtor itself would be, "without regard to the trustee's status as an innocent successor."[15]  Furthermore, the *in pari delicto* defense is a proper subject of a motion to dismiss where the defense is apparent from the face of the complaint.[16]  Under these general rules—which are subject only to discrete, narrow exceptions, none of which applies here—the doctrine of *in pari delicto* bars the Trustee's claims against CGMI and MLPFS.

Significantly, "[t]he harm that the plaintiff[] seek[s] to recover on [Tribune's] behalf unquestionably resulted from [Tribune's] own participation in illegal conduct."[17]  As discussed above, the FAC is replete with allegations that Tribune—through its officers and directors—committed intentional fraud and breached fiduciary obligations when it approved and consummated the LBO.  (*See supra* at 5.)  The fact that the Trustee also seeks to assign fault to others outside Tribune is unimportant.  The *in pari delicto* doctrine does not require—and indeed

---

[13] *In re LTM2 Co-Investment, L.P.*, 866 A.2d 762, 775 (Del. Ch. 2004) (quoting O*fficial Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 354 (3d Cir. 2001)).

[14] *See In re Am. Int'l Group, Inc.*, 976 A.2d at 883 n.25; *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 513 (D. Del. 2012).

[15] *R.F. Lafferty & Co.*, 267 F.3d at 358; *cf. Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Secs. LLC),* 721 F.3d 54, 63 (2d Cir. 2013) ("The debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative.") (applying New York law).

[16] *See, e.g.*, *Zazzali*, 482 B.R. at 512 n.16 ("The Trustee's assertion that the Court cannot apply the doctrine of *in pari delicto* on a motion to dismiss is without merit."); *cf. Picard*, 721 F.3d at 65 ("Early resolution is appropriate where (as here) the outcome is plain on the face of the pleadings.") (applying New York law).

[17] *In re Am. Int'l Group, Inc.*, 976 A.2d at 883.

is intended to avoid—any effort to weigh fault or "precisely calibrate which of the parties acted with the guiltiest mind."[18]    Accordingly, the Trustee's allegations are more than sufficient to establish an *in pari delicto* defense.[19]

### C.    The Adverse Interest Exception Is Inapplicable.

Nor can the Trustee salvage the aiding-and-abetting claim by invoking the "adverse interest" exception to the *in pari delicto* doctrine.  The adverse interest exception is "narrow" and "applies only where the fraud is ***entirely adverse*** to the corporation's interest, such that the actor has completely abandoned the corporation's interests."[20]    A showing of "some benefit" to the corporation renders the exception inapplicable.[21]

The decision in *Zazzali* is instructive.  The fraudulent conduct in *Zazzali*  was a Ponzi scheme operated by the debtor, DBSI.[22]    As in all Ponzi schemes, the fraud used newly raised investors' funds to pay off existing investors.  Certain funds were also misappropriated by DBSI executives.  Following DBSI's bankruptcy, the litigation Trustee brought claims against DBSI's legal counsel for their alleged role in the fraud.  Yet even though the Ponzi scheme ultimately failed, the Court still held that the adverse interest exception did not apply, because "the fraud conferred a benefit on DBSI in the form of bringing in more than $100 million of revenue to

---

[18] *Id.* at 883-84.

[19] *See id.* at 884; *see also Zazzali*, 482 B.R. at 512-513 ("The Court concludes that the doctrine of *in pari delicto* bars the Trustee from asserting Counts One through Four on behalf of the ELT. Here, the Complaint alleges that the entire DBSI structure was fraudulent and that DBSI became 'nothing more than' an elaborate 'Ponzi scheme to defraud investors.'").

[20] *Zazzali*, 482 B.R. at 513 (emphasis in original); *see also In re Am. Int'l Group, Inc.*, 976 A.2d at 891 (adverse interest exception applies only in cases of "total abandonment of the corporation's interests").

[21] *Zazzali*, 482 B.R. at 513.

[22] *Id.* at 503.

DBSI, some of which was used for 'general corporate purposes.'"[23]   As the Court explained, "[w]hile the decision of the insiders to steal this money may have harmed the corporation, this does not alter the fact that the insiders still conferred some benefit on DBSI."   The Court concluded that the insiders' conduct was not entirely adverse to DBSI's interests."[24]

The same reasoning applies here.   For example, the Trustee's own allegations establish that the LBO had a legitimate corporate purpose:   Tribune would "become a privately held company that could reap the tax benefits afforded to an S corporation owned by an ESOP." (FAC ¶ 137.)   The FAC describes these anticipated tax savings as "approximately $1 billion" and alleges that Tribune "intended to . . . retain in the Company the cash that ordinarily would have been used to pay [the taxes]."   (*Id.* ¶ 101.)   These allegations are more than sufficient to render the "adverse interest" exception inapplicable.[25]

Further, the Trustee's conclusory allegations that the officers and directors "abandoned Tribune's interests altogether," acted "in the sole pursuit of their personal individual interests," and "engaged in actions that did not confer any benefit upon or serve any corporate purpose for Tribune" (FAC ¶ 229), do not change this result.   "[E]ven at the motion to dismiss stage, the plaintiff [is] only entitled to inferences that are supported by pled facts, not conclusory allegations."[26]   Accordingly, the Trustee's bare conclusions warrant no deference.[27]

---

[23] *Id.* at 513.

[24] *Id.* (citation omitted).

[25] *See Zazzali*, 482 B.R. at 513; *In re Am. Int'l Group, Inc.*, 976 A.2d at 892 (rejecting notion that *in pari delicto* is unavailable where officials acted with an "admixture of corporate and personal objectives").

[26] *In re Am. Int'l Group, Inc.*, 976 A.2d at 881; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[27] *Iqbal*, 556 U.S. at 681.

## II.    THE PROFESSIONAL MALPRACTICE CLAIM FAILS AS A MATTER OF LAW.

The Trustee's professional malpractice claim fails as a matter of law for two independent reasons. *First*, New York law does not recognize a claim for professional malpractice against financial advisors such as CGMI and MLPFS. *Second*, under New York's *in pari delicto* doctrine and the Second Circuit's *Wagoner* rule, the Trustee is barred from suing third parties like CGMI and MLPFS, because Tribune management participated in the allegedly wrongful underlying conduct.

### A.    New York Law Applies to the Professional Malpractice Claim.

Delaware courts consider four factors to determine applicable substantive law:  (i) the injury's location, (ii) the place where the conduct causing the injury occurred, (iii) the place of incorporation and principal place of business of the parties, and (iv) the place where the relationship between the parties is centered.[28]  In applying this test, the Court should evaluate the contacts in accordance with their relative importance to the particular issue.[29]

Under that standard, New York law applies to the professional malpractice claim.  The only factors arguably pointing away from New York law are the FAC's allegations that board meetings took place in Chicago (FAC ¶¶ 83-84) and that Tribune was "headquartered in Chicago."  (FAC ¶ 32.)  But those contacts pale in comparison to New York's contacts to this claim.  *First*, as discussed above (*see supra* at 4-5), both CGMI and MLPFS have their principal place of business in New York.  As advisors based in New York, MLPFS and CGMI are entitled

---

[28] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (citing RESTATEMENT (SECOND) OF CONFLICTS § 145 (1971)).

[29] *Id.*

to rely on the laws of the state that regulates their conduct.[30]  *Second*, as discussed above, all of the CGMI employees and the most prominent MLPFS employee mentioned in the FAC—Michael Costa[31]—were based in New York.   *Third*, the "relationship between the parties is centered" in New York because the parties agreed in their respective Engagement Letters that New York law would govern their relationship.   (MLPFS Engagement Letter ¶ 12; CGMI Engagement Letter p.5.)  Thus, while Tribune "may have suffered injury" in some other state, New York law should apply to the professional malpractice claim because "the conduct underlying any liability of [MLPFS and CGMI] alleged by [the Trustee]" occurred in New York.[32]

### B.    New York Does Not Recognize a Claim for "Professional Malpractice" Against Financial Advisors.

The Trustee's claim for professional malpractice fails because financial advisors are not one of the small group of occupations subject to such claims.  The New York Court of Appeals has held that professional malpractice claims are limited only to certain fields—such as law, accounting, and medicine—that require "extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond

---

[30] *In re Am. Int'l Group, Inc.*, 965 A.2d 763, 820-21 (Del. Ch. 2009) (applying New York law to a professional malpractice claim in part because the auditor "performed most of its audit services" in New York); *Corning Inc. v. SRU Biosystems, LLC*, 292 F. Supp. 2d 583, 585 (D. Del. 2003) (applying Delaware law because that is the jurisdiction where wrongdoing occurred and where the parties' relationship was centered).

[31] Costa is prominently mentioned in the preamble to the FAC and is identified sixteen more times after that.  (FAC ¶¶ 46, 74, 85, 88, 89, 170, 179, 212, 215.)  In contrast, O'Grady—whose location is not identified—is mentioned a mere three times.

[32] *Corning*, 292 F. Supp. 2d at 585.

those accepted in the marketplace and a system of discipline for violation of those standards."[33]

Both federal and state courts in New York have repeatedly held that financial advisors (like

many other disciplines that require extensive training and sophisticated knowhow[34]) do not fall

into this narrow category and, therefore, are not subject to liability for professional malpractice.[35]

Further, the Trustee's allegations that CGMI and MLPFS were "professional financial

advisor[s]" and provided "professional financial advice" (FAC ¶¶ 248-50) do not alter this

analysis. To survive a motion to dismiss, the Trustee must plead plausible facts showing that

CGMI and MLPFS meet "the recognized criteria for professional status" under New York law—

conclusory assertions are insufficient.[36] The FAC is devoid of *any* such factual allegations—

---

[33] *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 29 (2001). To be clear, MLPFS and CGMI do not concede that they failed to conform to the heightened standard of conduct applicable to professional malpractice claims. Indeed, the only reason the Trustee sued MLPFS and CGMI for malpractice is because he could not sue them for negligence since Tribune agreed to hold CGMI and MLPFS harmless for any liability other than gross negligence and bad faith. (Engagement Letters at addendum.)

[34] *See, e.g.*, *Castle Oil Corp. v. Thompson Pension Employee Plans, Inc.*, 299 A.D.2d 513, 514 (2d Dep't 2002) (holding that actuaries are not professionals); *Atkins Nutritionals, Inc. v. Ernst & Young, LLP*, 301 A.D.2d 547, 548 (2d Dep't 2003) (concluding that computer consultants were not subject to professional malpractice claim); *Chase Scientific*, 96 N.Y.2d at 30 (noting that "insurance agents and brokers are held to high standards of education and qualification . . . but these criteria are simply not as rigorous as those embraced by what we conclude are the professionals").

[35] *See, e.g.*, *Ironshore Ins. Ltd. v. W. Asset Mgmt. Co.*, No. 11 CIV. 05954 LTS, 2012 WL 1981477, at *3 (S.D.N.Y. May 30, 2012) (financial advisor was not a "professional" because work "does not require the same degree of 'extensive formal learning and training' as is required of lawyers, doctors, engineers and architects"); *Gray & Assoc., LLC v. Speltz & Weis LLC*, 880 N.Y.S.2d 223 (N.Y. Sup. Ct. 2009) (dismissing professional malpractice claims against turnaround and restructuring advisors because they "were not engaged in a 'profession'"); *In re Magnesium Corp. of Am.*, 399 B.R. 722, 754-56 (Bankr. S.D.N.Y. 2009) (debtor's prepetition financial advisor and investment bank not a professional); *Dimsey v. Bank of N.Y.*, 831 N.Y.S.2d 359 (N.Y. Sup. Ct. 2006) ("BNY in its capacity as financial advisor is not considered a professional for the purpose of professional malpractice").

[36] *Houbigant v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 217 (S.D.N.Y. 2002) (dismissing malpractice claim under New York law against management consultants); *see also Iqbal*, 556

much less plausible allegations—establishing that either CGMI or MLPFS were members of "the learned professions, exemplified by law and medicine."[37]  Because the Trustee "fail[ed] to plead that Defendants were 'professionals' for purposes of a claim" for professional malpractice, that claim should be dismissed as a matter of law.[38]

## C. The Professional Malpractice Claim Fails Under the *In Pari Delicto* Doctrine and the *Wagoner* Rule.

For over 200 years, New York (like Delaware) has applied the *in pari delicto* doctrine to bar claims between two alleged wrongdoers.[39]  Indeed, courts have repeatedly held that the *in pari delicto* doctrine is a defense to professional malpractice claims by corporations (or their shareholders) against accountants and attorneys who allegedly assisted wrongful conduct by the corporation's management.[40]

In the federal bankruptcy context, the *in pari delicto* doctrine gives rise to the Second Circuit's *Wagoner* rule, which provides that a trustee lacks standing to bring claims against third

---

[37] *Chase Scientific Research, Inc.*, 96 N.Y.2d at 29.

[38] *Houbigant*, 229 F. Supp. 2d at 217.

[39] *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (N.Y. 2010) ("in pari delicto mandates that the courts will not intercede to resolve a dispute between two wrongdoers") (citing *Woodworth v. Janes*, 2 Johns Cas 417, 423 (N.Y. 1800); *Sebring v. Rathbun*, 1 Johns Cas 331, 332 (N.Y. 1800)); *see also Picard*, 721 F.3d at 63 ("Under New York law, one wrongdoer may not recover against another.").

[40] *See, e.g., Kirschner*, 15 N.Y.3d at 476  (*in pari delicto* doctrine bars accounting malpractice claim); *Chaikovska v. Ernst & Young, LLP*, 78 A.D.3d 1661, 1662 (4th Dep't 2010) (same); *Holtkamp v. Parklex Assoc.*, 926 N.Y.S.2d 344, 2011 NY Slip Op 50208(U), *8-9 (N.Y. Sup. Ct. 2011) (dismissing legal malpractice claims under *in pari delicto* doctrine), *aff'd* 94 A.D.3d 819 (2d Dep't 2013); *Metro. Plaza WP, LLC v. Goetz Fitzpatrick, LLP*, No. 11519/2009, 2013 WL 5574533, at *7-11 (N.Y. Sup. Ct. Sept. 30, 2013) (same).

parties alleged to have participated in or aided the bankrupt corporation's wrongdoing because a trustee "stands in the shoes of the bankrupt corporation" and only "has standing to bring any suit that the bankrupt corporation could have instituted."[41]     Thus, where the corporation's management participates in the alleged underlying wrongdoing, the cause of action "accrues to creditors, not to the guilty corporation."[42]  It is well-settled that the under the *Wagoner* rule, "a bankruptcy trustee does not have standing to bring any claims related to professional malpractice in the context of cooperative wrongdoing between the debtor and" third parties.[43]

Here, the professional malpractice claim against CGMI and MLPFS arises out of and is directly related to the Trustee's allegations that Tribune's management breached its fiduciary duties and took actions intended to defraud Tribune's creditors.  (*See, e.g.*, FAC ¶ 250; *see supra* at 5.)  Moreover, the Trustee cannot invoke the adverse interest exception because New York "reserves this most narrow of exceptions for those cases—outright theft or looting or embezzlement—where the insider's misconduct benefits only himself or a third party"— circumstances not present here.[44]     (*See also supra* at I.C.)    Accordingly, the professional

---

[41]  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *see also Kirschner*, 15 N.Y.3d at 359 n.3 (discussing relationship between *in pari delicto* doctrine and *Wagoner* rule).

[42]  *Id.* at 120.

[43]  *Bankr. Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 448 (2d Cir. 2008); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir. 1995) (under *Wagoner* rule trustee lacked standing to assert professional malpractice claims against auditor); *In re Complete Mgmt., Inc.*, No. 02 CIV. 1736 NRB, 2003 WL 21750178, at *3-4 (S.D.N.Y. July 29, 2003) (same);  *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 709 (S.D.N.Y. 2001) (same).

[44]  *Kirschner*, 15 N.Y.3d at 466-67; *see also Picard,* 721 F.3d at 64 (*in pari delicto* doctrine bars claims against third parties by Madoff trustee); *Concord Cap. Mgmt., LLC v. Bank of Am., N.A.*, 102 A.D.3d 406 (1st Dep't 2013) (*in pari delicto* doctrine bars claim against banks by company whose former executives "looted" company).

malpractice claim is clearly barred by both New York's application of the *in pari delicto* doctrine and the Second Circuit's *Wagoner* rule.

## III.    THE FRAUDULENT CONVEYANCE CLAIM FAILS AS A MATTER OF LAW.

### A.    The Court Should Dismiss the Constructive Fraudulent Conveyance Claim Because MLPFS and CGMI Provided Reasonably Equivalent Value.

The Trustee cannot avoid and recoup the advisory fees as a constructive fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) unless he can establish, among other things, that Tribune received "less than a reasonably equivalent value in exchange for" the advisory fees.[45] But the Trustee cannot, as a matter of law, meet this standard because it is clear from the FAC that Tribune paid the advisory fees in satisfaction of an antecedent debt—its obligations under the Engagement Letters.[46]  It is black-letter bankruptcy law that when a company satisfies an unavoidable antecedent debt, it receives value for the payment it makes.[47]

---

[45] *See* 11 U.S.C. § 548(a)(1)(B)(i); *In re Geltzer*, 502 B.R. 760, 771 (Bankr. S.D.N.Y. 2013) ("A plain reading of § 548(a)(1)(B) provides that a trustee may recover transfers for which the debtor—and the debtor alone—did not receive reasonably equivalent value."). As discussed above (*see supra* at I.A), the Court should apply its own interpretations of federal law.

[46] Importantly, because the Engagement Letters were executed more than two years before Tribune's bankruptcy filing, the Trustee cannot (and has not sought to) avoid the Engagement Letters themselves as fraudulent conveyances.  11 U.S.C. § 548(a)(1) (only obligations incurred within two years of bankruptcy are avoidable); *In re Madoff Secs.*, No. 12-MISC-115 (JSR), 2014 WL 1651952, at *1 (S.D.N.Y. Apr. 27, 2014).  The FAC pleads that the MLPFS Engagement Letter was executed on October 17, 2005, more than three years prior to the Tribune's bankruptcy filing.  (FAC ¶ 42; Gordon Decl. Ex. B.)  The FAC pleads that the CGMI Engagement Letter was executed on October 26, 2005  (FAC ¶ 43), while the Engagement Letter itself is dated October 27, 2006 (Gordon Decl. Ex. A)—both more than two years before Tribune's bankruptcy filing.

[47] *See* 11 U.S.C. § 548(d)(2)(A) (defining "value" to include "satisfaction . . . of a present or antecedent debt of the debtor"); *see also Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987) ("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor.").

The Engagement Letters unambiguously obligated Tribune to pay a Success Fee to CGMI and MLPFS if Tribune "consummated" a "Strategic Transaction," or "Transaction," defined as "a transaction or series of transactions in which one or more Purchasers acquire . . . directly or indirectly a majority of the stock . . . of the Company or otherwise gains control of the Company." (MLPFS Engagement Letter ¶¶ 2-3; CGMI Engagement Letter pp. 1, 3.) It cannot be disputed that Zell/EGI's acquisition of control over Tribune through the two-step LBO constituted a "Strategic Transaction" under the Engagement Letters. (FAC ¶¶ 34-36 (overview of the LBO in which Tribune purchased all of its outstanding common stock).) Thus, by the time the LBO closed in 2007 (FAC ¶ 35), the Strategic Transaction was "consummated" and CGMI and MLPFS were legally entitled to fees under the Engagement Letters. (FAC ¶¶ 42-43.) This was the antecedent debt.[48]

Tribune thus satisfied unavoidable and antecedent obligations to CGMI and MLPFS under the Engagement Letters by paying the advisory fees in January 2008. (FAC ¶ 44.) And even if the advisory fees could somehow be characterized as contingent or disputed obligations—and they cannot—courts have consistently construed the phrase "antecedent debt" broadly to include payment of contingent or disputed obligations.[49] The advisory fees payment

---

[48] *See Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 39 (Bankr. S.D.N.Y. 2006) (antecedent debt arises when the debtor becomes "legally obligated to pay"); *see also In re First Jersey Secs., Inc.*, 180 F.3d 504, 510-11 (3d Cir. 1999) ("Courts which have considered this issue have concluded, consistent with the statutory definitions, that an antecedent debt owed by the debtor occurs when a right to payment arises— even if the claim is not fixed, liquidated, or matured.") (*citing In re Bennett Funding Group, Inc.*, 220 B.R. 739, 742 (2nd Cir. BAP 1998)).

[49] *See Perkins v. Haines*, 661 F.3d 623, 626-27 (11th Cir. 2011) ("Although antecedent debt is not defined, the term 'debt' is stated to include 'liability on a claim,' . . . and 'claim' is broadly defined as the 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, unmatured, *disputed*, undisputed, legal, equitable, secured, or unsecured.'") (citations omitted) (emphasis added); *Enron*, 357 B.R. at 44 ("More

was thus "for value" because it satisfied Tribune's antecedent debt.[50]  Accordingly, the Trustee's constructive fraudulent conveyance claim fails because "[b]y definition, [Tribune] received reasonably equivalent value from the satisfaction of its contractual obligations under these agreements."[51]

Moreover, even if it were not evident from the FAC that Tribune received value in exchange for paying the advisory fees by satisfying an antecedent debt it owed to MLPFS and CGMI—and it is—the constructive fraudulent conveyance claim should still be dismissed because the Trustee has not adequately pled that Tribune received less than reasonably equivalent value in exchange for the advisory services CGMI and MLPFS provided.  While the FAC mechanically checks off the elements of a constructive fraudulent conveyance claim, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not survive a motion to dismiss.[52]  The fees Tribune agreed to pay CGMI and MLPFS in connection with the LBO were negotiated at arms'-length over a year before the LBO was even suggested to Tribune.  (FAC ¶¶ 42-43.)  The FAC offers no explanation as to how or why the services CGMI and MLPFS provided represent less than reasonably equivalent value.[53]  And by alleging that the advisory fees "paled" in comparison to the financing fees CGMI and

---

importantly, the case law reveals an obvious trend interpreting 'antecedent debt' broadly and rejecting the proposition that debt is only incurred as it becomes due.").

[50] *See In re Tanner Family, LLC*, 556 F.3d 1194, 1197 (11th Cir. 2009) (holding that debt was incurred when the debtor signed a contract obligating payment, and thus the obligation was antecedent to payment under the agreement).

[51] *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 766 (Bankr. W.D. La. 2013).

[52] *Iqbal*, 556 U.S. at 678.

[53] *See In re Interco Sys., Inc.*, 202 B.R. 188, 194 (Bankr. W.D.N.Y. 1996) (professional services rendered pursuant to an arms'-length contract constituted reasonably equivalent value).

MLPFS affiliates stood to gain from participating in the LBO financing (FAC ¶ 42), the FAC undermines any inference that Tribune received less than reasonably equivalent value because it suggests that the advisory fees were actually a loss leader for CGMI and MLPFS—*i.e.*, they charged Tribune *less* than the value of the services provided.[54]  Courts in this district routinely dismiss constructive fraudulent conveyance claims with similarly threadbare reasonably-equivalent-value allegations.[55]  The constructive fraudulent claim should likewise be dismissed here, because the Trustee "has alleged no fact from which the Court could reasonably infer that [MLPFS and CGMI] paid less than reasonably equivalent consideration."[56]

### B.    The Court Should Dismiss the Actual Fraudulent Conveyance Claim.

Under Fed. R. Civ. P. 9(b), to prevail on his actual fraudulent conveyance claim, the Trustee must plead with particularity facts giving rise to "a strong inference" that Tribune paid the advisory fees "with actual intent to hinder, delay or defraud" its creditors.[57]  Moreover, that

---

[54] *See O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 387 (Bankr. S.D.N.Y. 2011) ("Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.").

[55] *See, e.g.*, *Liquidation Trust v. Daimler AG (In re Old Carco LLC)*, 509 F. App'x 77, 78 (2d Cir. 2013) (affirming dismissal because the "Trust failed to plausibly allege that the debtor (CarCo) received less than reasonably equivalent value."); *Official Comm. of Unsecured Creditors of Hydrogen LLC v. Blomen*, 431 B.R. 337, 353 (Bankr. S.D.N.Y. 2010) (dismissing constructive fraudulent transfer claim where there was "a complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange for the payments made to Defendants."); *In re Enron Corp.*, No. 01-16034, 2006 WL 2400369, at *8 (Bankr. S.D.N.Y. May 11, 2006) (dismissing constructive fraudulent transfer claim because plaintiffs failed to allege that the debtor did not receive reasonably equivalent value).

[56] *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1227 (C.D. Cal. 2012).

[57] 11 U.S.C. § 548(a)(1)(A); *In re Bernard L. Madoff Inv. Secs. LLC*, 740 F.3d 81, 90 n.11 (2d Cir. 2014) ("A transfer is deemed to be fraudulent—and therefore 'avoidable' under the Bankruptcy Code—if the transfer was made 'with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted'"); *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 642 (Bankr. S.D.N.Y. 2009); *In re Marketxt Holdings Corp.*, 361

fraudulent intent must be specific to the particular transaction the Trustee seeks to avoid.[58]  The

Trustee cannot meet that heavy burden here, because he does not allege that Tribune intended to

defraud its creditors *by paying the advisory fees*—as opposed to by entering into the LBO.

The Second Circuit's decision in *Sharp International* illustrates the FAC's fatal flaw.

There, the Sharp estate sued State Street Bank to claw back $12.25 million Sharp paid State

Street to partly satisfy a $15 million loan.  Sharp's trustee alleged that State Street knew that the

payment came from the proceeds of $25 million Sharp management had fraudulently

borrowed.[59]  But the Second Circuit affirmed the actual fraudulent conveyance claim's dismissal,

holding that the "fraud alleged in the complaint relates to the manner in which Sharp obtained

new funding . . . not Sharp's subsequent payment of part of the proceeds to State Street."[60]  The

Court concluded that the payment "at most [was] a preference between creditors and did not

'hinder, delay, or defraud either present or future creditors.'"[61]

This case is on all fours with *Sharp*.  While courts permit a trustee to plead the

transferor's fraudulent intent by identifying "badges of fraud,"[62] all of the alleged badges of

---

B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (actual fraudulent conveyance claims subject to Rule 9(b)'s pleading with particularity requirement).

[58] *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005).  While *Sharp International* was decided under New York's Debtor & Creditor Law and not the Bankruptcy Code, both statutes require the same showing of the transferor's fraudulent intent.  *Compare* 11 U.S.C. § 548(a)(1)(A) *with* N.Y. Debt. & Credit. L. § 276; *see also In re Agape World, Inc.*, 467 B.R. 556, 569 (Bankr. E.D.N.Y. 2012) (holding that actual fraudulent conveyance claims under both the Bankruptcy Code and New York's Debtor & Creditor Law "require[] a finding of intent by the transferor to defraud").

[59] *Sharp Int'l Corp.*, 403 F.3d at 47-48.

[60] *Id.* at 56.

[61] *Id.*

[62] *Id.*; *see also Pereira*, 421 B.R. at 643.

fraud pled here relate solely to the approval of the LBO in 2007, not to the payment of the advisory fees in 2008.  (FAC ¶¶ 205-29; 255; 256(d).)  Indeed, as in *Sharp*, the Trustee only alleges that Tribune paid the advisory fees "at the same time as" or "with the proceeds of[] the LBO Loans."  (FAC ¶ 256(c).)  The Trustee does *not* allege that Tribune *paid the advisory fees* with an intent to defraud its creditors.

Moreover, the alleged badges of fraud—to the extent that they could be construed to relate to the payment of the advisory fees—fail to establish a "strong inference" that Tribune paid the advisory fees to defraud its other creditors.  For example, the Trustee does not allege: (i) a familial or particularly close relationship between Tribune and CGMI or MLPFS;[63] (ii) that the advisory fees were paid in haste or in secret; or (iii) that MLPFS or CGMI retained an interest in Tribune's business or property after the January 2008 payment.  And even if the advisory fees were somehow not an ordinary business event (FAC ¶ 256(b)), "allegations of questionable transactions not in the ordinary course of business," standing alone, do "not give rise to an inference that [CGMI and MLPFS] knowingly participated in a scheme to defraud [Tribune's] creditors."[64]  Accordingly, the Court should also dismiss the actual fraudulent conveyance claim.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety with prejudice.

---

[63] While the FAC alleges that CGMI and MLPFS representatives attended numerous Tribune board meetings between 2005 and 2007 (FAC ¶¶ 83-84), there is no allegation that there was anything improper about a financial advisor regularly meeting with its client.

[64] *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 809-10 (Bankr. S.D.N.Y. 2005) (dismissing actual fraudulent conveyance claim because "the Complaint contains few if any 'badges of fraud' in its various allegations"); *see also Marketxt Holdings*, 361 B.R. at 396-97 (dismissing actual fraudulent conveyance claim where trustee failed to allege close familial or personal relationships between the parties or that transfers were made in secret).

Dated: May 23, 2014
       New York, New York


O'MELVENY & MYERS LLP                    PAUL, WEISS, RIFKIND,
                                           WHARTON & GARRISON LLP

By:  _/s/ Daniel L. Cantor_              By:  _/s/ Andrew G. Gordon_
     Daniel L. Cantor                         Andrew G. Gordon
     dcantor@omm.com                          agordon@paulweiss.com
     Evan M. Jones                            Kira A. Davis
     ejones@omm.com                           kdavis@paulweiss.com
     Daniel S. Shamah
     dshamah@omm.com                     1285 Avenue of the Americas
                                         New York, New York 10019-6064
7 Times Square                           Tel.  (212) 373-3000
New York, New York 10036                 Fax  (212) 757-3990
Tel. (212) 326-2000
Fax (212) 326-2061
                                         *Attorneys for Defendant Citigroup Global*
                                         *Markets Inc.*
*Attorneys for Defendant Merrill Lynch,*
*Pierce, Fenner & Smith Incorporated*