**EXHIBIT B**





Global Markets & Investment
Banking Group

4 World Financial Center
North Tower 30th Floor
New York, New York 10080
212 449 1000

As of October 17, 2005

STRICTLY PRIVATE AND CONFIDENTIAL

The Board of Directors
Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611

Attention: *Mr. Dennis J. FitzSimons, Chairman, President, and Chief Executive Officer*

Pursuant to our recent conversations, we are pleased to confirm the arrangements under which Merrill Lynch & Co. ("Merrill Lynch") will act as a financial advisor to Tribune Company (the "Company") in connection with a Strategic Transaction (as defined below) with one or more third parties (each a "Purchaser").

1. Scope of Engagement. We will perform such financial advisory and investment banking services for the Company as are customary and appropriate in transactions of this type and as you reasonably request including assisting the Company in identifying and, with the Company's consent, contacting potentially interested parties and in analyzing, structuring, negotiating and effecting a proposed Strategic Transaction on the terms and conditions of this letter agreement.

If requested by the Company, Merrill Lynch will render, in accordance with our customary practice, an opinion (the "Opinion") as to whether the consideration (or exchange ratio) to be paid in the proposed Strategic Transaction is fair from a financial point of view to the Company or the shareholders of the Company, other than the Purchaser, as applicable. The Opinion will be dated as of a date reasonably proximate to the date of the definitive agreement. The Opinion will be prepared solely for the use and benefit of the Board of Directors of the Company and will not be disclosed or given to any other person without our prior written consent. If reference to the Opinion is required by law or regulation to be made in a proxy statement, Schedule 14D-9, Schedule 13e-3 or offer to purchase, we will not unreasonably withhold our consent thereto so long

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0397765

as the full text of our Opinion is reproduced therein and we approve in advance the text of any accompanying disclosure.

The Company acknowledges and understands that if Merrill Lynch participates in any Financing (as defined in Section 11 below) for a potential Purchaser and the Company requests an Opinion from Merrill Lynch pursuant to the terms of this letter agreement, Merrill Lynch will only provide such Opinion if the Company engages a third party financial advisor that is not participating in any Financing for any potential Purchaser, to render an additional opinion to the Company as to whether the consideration (or exchange ratio) to be paid in the proposed Strategic Transaction is fair from a financial point of view to the Company or the Company's shareholders, other than the Purchaser, as applicable.

2.  **Strategic Transaction.** For purposes of this agreement, a "Strategic Transaction" is a transaction or series of transactions in which one or more Purchasers acquire or propose to acquire directly or indirectly a majority of the stock, assets, revenues, income or business of the Company or otherwise gains control of the Company, including any combination of the businesses regardless of the structure or form of the transaction.

3.  **Fee.** If, during the period Merrill Lynch is retained by the Company or within eighteen months thereafter (the "Tail Period"), a Strategic Transaction is consummated or the Company enters into an agreement regarding a Strategic Transaction (which is subsequently consummated), the Company agrees to pay Merrill Lynch a fee of $12.50 million (the "Success Fee"), payable in cash upon the closing of the Strategic Transaction. In addition, to the extent Merrill Lynch earns fees in a Financing where Merrill Lynch acts as a book-running manager or lead arranger (or in another equivalent role in title and economics relevant to the type of financing), the Success Fee will be reduced by an amount equal to twenty-five percent (25%) of the net financing fees paid to Merrill Lynch (after syndication costs and other expenses in connection with the Financing) up to an aggregate maximum amount of $3.75 million. In no event will Merrill Lynch be entitled to more than one Success Fee with respect to the consummation of a Strategic Transaction or any subsequent transaction.

All fees and expenses payable hereunder are net of all applicable withholding and similar taxes.

4.  **Expenses.** In addition to the fees, the Company agrees to reimburse Merrill Lynch, upon request made from time to time, for its reasonable expenses incurred in connection with this engagement in its capacity as a financial advisor to the Company. These expenses generally include travel costs, document production and other customary expenses for this type of transaction, including the reasonable fees and disbursements of legal counsel.

5.  **Disclosure.** Any document, advice, opinion or analysis provided by Merrill Lynch hereunder will be solely for the use and benefit of the Board of Directors and senior management of the Company and will not be quoted, reproduced, summarized, or otherwise disclosed, nor will any reference to Merrill Lynch be made, without Merrill Lynch's prior written consent; provided, however, to the extent that any such document, advice, opinion or analysis has been subpoenaed by a court of competent jurisdiction or is required to be filed with the Federal Trade Commission, the Antitrust Division of the Department of Justice or other similar governmental body, the Company may disclose such document, advice, opinion or analysis, provided that the Company agrees to provide Merrill Lynch with prompt notice of such subpoena or intent to file in order to enable Merrill Lynch to seek an appropriate protective order or other remedy and to consult with

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0397766

Merrill Lynch with respect to Merrill Lynch's taking steps to resist or narrow the scope of such subpoena or to preserve the confidential nature of any confidential information contained therein. Notwithstanding any other provision of this letter agreement, immediately upon the commencement of discussions with respect to the transactions contemplated hereby, the Company (and each employee, representative or other agent of the Company) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by this letter agreement and all materials of any kind (including opinions or other tax analyses) that are provided to the Company relating to such tax treatment and tax structure.

6. **Information.** The Company will furnish, or arrange to have furnished to, Merrill Lynch such information as Merrill Lynch believes appropriate to its engagement hereunder (all such information so furnished being the "Information"), and will update such Information as appropriate. The Company recognizes and consents to the fact that Merrill Lynch (i) will use and rely on the accuracy and completeness of the Information supplied or otherwise made available to Merrill Lynch without having any obligation to independently verify the same, (ii) does not assume responsibility for the accuracy or completeness of the Information or such other information, (iii) has no obligation to undertake an independent evaluation, appraisal or physical inspection of any assets or liabilities of the Company or a Purchaser, and (iv) with respect to any financial forecasts (including cost savings and synergies) that may be furnished to or discussed with Merrill Lynch by the Company or a Purchaser, will assume that they have been reasonably prepared and reflect the best then currently available estimates and judgment of the Company's or such Purchaser's management.

7. **Independent Contractor.** It is understood and agreed that Merrill Lynch is retained to act solely as financial advisor and, in such capacity, shall act as an independent contractor with duties solely to the Company and nothing in this letter agreement or the nature of the services shall be deemed to create a fiduciary or agency relationship between Merrill Lynch and the Company or its stockholders, creditors, employees or any other party.

8. **Term and Termination.** This engagement may be terminated by the Company or Merrill Lynch at any time (the "Term") upon written notice to that effect to the other party, it being understood that the provisions of Section 3 (Fee), 4 (Expenses), 5 (Disclosure), 8 (Term and Termination), 9 (Indemnity) and 12 (Miscellaneous) shall survive termination of this agreement. Notwithstanding the foregoing, no Success Fee shall be payable by the Company to Merrill Lynch hereunder if Merrill Lynch terminates this engagement prior to the signing by the Company of any definitive agreement with respect to a Strategic Transaction.

9. **Indemnity.** In connection with engagements such as this, it is Merrill Lynch's policy to receive indemnification. The Company agrees to the provisions with respect to the indemnification of Merrill Lynch and the other matters set forth in Annex A relating to the Strategic Transaction. The Company and Merrill Lynch agree that the Financing, and any activities of the Financing Team or Purchaser Team, in connection with the Financing, shall not be deemed to be within the scope of Annex A. Annex A is incorporated by reference in its entirety into this letter.

10. **Public Announcement.** The Company acknowledges that Merrill Lynch may, at its option and expense, place an announcement in such newspapers, periodicals and electronic media as it may choose, stating that Merrill Lynch has acted as the financial advisor to the Company in connection with a Strategic Transaction. Prior to the publication of any such announcement, Merrill Lynch shall obtain the Company's approval of the draft of such announcement. The

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0397767

Company may include a reference to Merrill Lynch as its financial advisor in any press release or public announcement with respect to the transactions contemplated in this letter agreement.

11. Financing Assistance. (a) The Company hereby consents to Merrill Lynch or any of its affiliates to provide financing or act as book-running manager, lead manager, co-manager, placement agent, bank agent, underwriter, arranger or principal counterparty or other similar role on behalf of one or more potential Purchasers in connection with a Strategic Transaction, or otherwise assisting one or more potential Purchasers in obtaining funds, through debt or equity financing or the sale of debt or equity securities (the "Financing") in connection with a Strategic Transaction.

Merrill Lynch will establish a team of employees (the "Financing Team") who will be permitted by the Company to attend the Company's management presentation and conduct formal due diligence investigations. In addition, the Financing Team will be permitted to contact the Company and its advisors with any additional questions and follow-up items it deems necessary or advisable.

The Company acknowledges, agrees and consents to (i) the Financing Team using the information it obtains as described above for the purpose of developing preliminary financing terms which will be shared with the Company, (ii) the Financing Team sharing and discussing such terms with one or more potential Purchasers which have entered into a confidentiality agreement with or for the benefit of the Company (a "Purchaser Confidentiality Agreement"), (iii) a specific team of Merrill Lynch employees (each a "Purchaser Team"), which may include one or more members of the Financing Team being established for the benefit of a Purchaser, (iv) the preliminary financing terms being made available to any Purchaser Team, (v) without limitation of the confidentiality provisions contained herein, all information obtained in the course of conducting due diligence investigations by members of the Financing Team and/or any Purchaser Team being used in connection with any financing assignment for a Purchaser, (vi) the Financing Team not acting on behalf of the Company at any time and not constituting part of the Company's financial advisory team (the "Advisory Team"), and (vii) the development of financing guidance or preliminary financing terms not being deemed to constitute a commitment by and creating no obligation or liability on the part of Merrill Lynch or any of its affiliates to provide financing to any Purchaser.

(b) Information furnished by the Company or its representatives to Merrill Lynch in connection with this engagement shall be kept confidential and will only be used by Merrill Lynch for purposes of its engagement hereunder, except information that (i) was in Merrill Lynch's possession prior to its disclosure by the Company, (ii) is publicly disclosed other than by Merrill Lynch in violation of this letter agreement, (iii) is obtained by Merrill Lynch from a person other than the Company who, to the knowledge of Merrill Lynch, is not bound by a confidentiality agreement with the Company, (iv) the Company agrees may be disclosed or (v) is required or requested to be disclosed under compulsion of law (whether by oral question, interrogatory, subpoena, civil investigative demand or otherwise), by order or act or request of any court or governmental or regulatory authority or body, in which case Merrill Lynch will first notify the Company of the request or order and give the Company a reasonable opportunity to oppose it. Merrill Lynch may also disclose such information to those of its own and its affiliates' respective officers, directors, employees, representatives, auditors and professional advisors who need to know such information for purposes of performing services described in this letter agreement as part of the Advisory Team. The obligations of Merrill Lynch under the two immediately preceding sentences shall terminate upon the second anniversary of this letter agreement. Merrill Lynch

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0397768

agrees that, without the Company's consent, the Advisory Team will not disclose any non-public information that the Company provides to such Advisory Team to the Financing Team or any Purchaser Team, and that the Financing Team and any Purchaser Team shall be entitled to non-public information relating to the Company only to the same extent to which a potential Purchaser is entitled.

The Financing Team shall be subject to the confidentiality provisions of this engagement letter, <u>provided</u> that the Financing Team shall be entitled to share its financing guidance in accordance with clause (a) above. In addition, each member of any Purchaser Team shall be subject to the confidentiality obligations (if any) of such potential Purchaser as a Representative of such potential Purchaser in lieu of the confidentiality provisions of this engagement letter.

12.    <u>Miscellaneous</u>.

(a)    Merrill Lynch is acting as Financial Advisor and is not an expert on, and cannot render opinions regarding, legal, accounting, regulatory or tax matters. You should consult with your other professional advisors concerning these matters before undertaking the proposed transaction.

(b)    Merrill Lynch is a full service securities firm engaged, either directly or through its affiliates, in various activities including securities trading, investment management, financing and brokerage activities and financial advisory services for companies, governments and individuals. In the ordinary course of these activities, Merrill Lynch and its affiliates may actively trade the debt and equity securities or other financial instruments (or related derivative instruments) of the Company, a Purchaser, or other parties which may be the subject of the engagement contemplated by this letter agreement for their own account and for the accounts of their customers and may at any time hold long and short positions in such securities or instruments. The interests of the parties described in this Section 12(b) may conflict with yours.

(c)    No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each party to be bound thereby. This letter agreement shall inure to the benefit of and be binding on the Company, Merrill Lynch and their respective successors.

(d)    In case any provision of this letter agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this letter agreement shall not in any way be affected or impaired thereby.

(e)    This letter agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.

(f)    Each of Merrill Lynch and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its shareholders) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this letter agreement.

(g)    It is understood that the Company, via a separate letter agreement, is also engaging Citigroup Global Markets Inc. ("Citigroup") as financial advisor in respect of the Strategic

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0397769

Transaction contemplated by this letter agreement on terms substantially similar to those contained in this letter agreement. It is also understood that the Board of Directors of the Company and the independent special committee of the Board that has been constituted to oversee management's exploration of alternatives may engage one or more financial advisors ("Potential Additional Advisor").

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Merrill Lynch the duplicate copy of this letter agreement enclosed herewith. We are delighted to accept this engagement and look forward to working with you on the assignment.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED

By _____
Michael Costa
Investment Banking Group

Accepted and Agreed to as of
the date first written above:

TRIBUNE COMPANY

By _____
Dennis FitzSimons
Chairman, President, and Chief Executive Officer

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0397770

## ANNEX A

The Company agrees to indemnify Merrill Lynch and its affiliates and their respective directors, officers, employees, agents and controlling persons (Merrill Lynch and each such person being an "Indemnified Party") from and against any and all losses, claims, damages and liabilities, joint or several, to which such Indemnified Party may become subject under any applicable law, or otherwise, and related to, arising out of, or in connection with, any Strategic Transaction contemplated by this engagement letter of which this Annex A is a part or the engagement of Merrill Lynch pursuant thereto, and the performance by Merrill Lynch of the services contemplated thereby, and will reimburse each Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of the Company. To the extent not precluded by considerations of conflicts of interest, the Indemnified Parties shall use a single firm of attorneys as their counsel. The Company will not be liable under the foregoing to the extent that any loss, claim, damage, liability or expense is found in a final judgment by a court of competent jurisdiction to have resulted from Merrill Lynch's bad faith or gross negligence.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of, or in connection with, any Strategic Transaction, the engagement of Merrill Lynch pursuant to, or the performance by Merrill Lynch of the services contemplated by, the engagement letter except to the extent that any loss, claim, damage or liability is found in a final judgment by a court of competent jurisdiction to have resulted from an Indemnified Party's bad faith or gross negligence.

If the indemnification of an Indemnified Party provided for in this letter agreement is for any reason held unenforceable, although otherwise applicable in accordance with its terms, the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Merrill Lynch, on the other hand, of any contemplated Strategic Transaction (whether or not such Strategic Transaction is consummated) or (ii) if (but only if) the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and Merrill Lynch, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and Merrill Lynch of any contemplated Strategic Transaction shall be deemed to be in the same proportion that the total value paid or issued or contemplated to be paid or issued to the Company by a Purchaser, as a result of or in connection with any Strategic Transaction, bears to the fees paid or to be paid to Merrill Lynch under the engagement letter; provided, however, that, to the extent permitted by applicable law, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Merrill Lynch under the engagement letter of which this Annex A is a part.

The Company agrees that, without Merrill Lynch's prior written consent, which consent shall not be unreasonably withheld or delayed, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0397771

which indemnification could be sought under this letter agreement (whether or not Merrill Lynch or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action or proceeding. If Merrill Lynch or any other Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company or a Purchaser in which such Indemnified Party is not named as a defendant, the Company will reimburse Merrill Lynch for all reasonable expenses incurred in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.

The provisions of this Annex A shall continue to apply and shall remain in full force and effect regardless of any modification or termination of the engagement or engagement letter of which this Annex A is a part or the completion of Merrill Lynch's services thereunder.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0397772